STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

07-1272


THOMAS NEIL GUIDRY, JR.

VERSUS

THERESA KAISER GUIDRY


**********

APPEAL FROM THE
TWENTY-SEVENTH JUDICIAL DISTRICT COURT
PARISH OF ST. LANDRY, NO. 03-C-4807-D
HONORABLE DONALD WAYNE HEBERT, DISTRICT JUDGE

**********

ULYSSES GENE THIBODEAUX
CHIEF JUDGE

**********

Court composed of Ulysses Gene Thibodeaux, Chief Judge, John D. Saunders, and Glenn B. Gremillion, Judges.


AFFIRMED.

Gregory B. Dean
Dean Law Offices
P. O. Drawer 280
Opelousas, LA 70571-0280
Telephone:  (337) 942-5111
COUNSEL FOR:
        Defendant/Appellee - Theresa Kaiser Guidry

Elizabeth A. Dugal
P. O. Box 2885
Lafayette, LA 70502-2885
Telephone:  (337) 237-2535
COUNSEL FOR:
        Plaintiff/Appellant - Thomas Neil Guidry, Jr.

**Richard R. Kennedy**
**P. O. Box 3243**
**Lafayette, LA 70502-3243**
**Telephone:  (337) 232-1934**
**COUNSEL FOR:**
     **Plaintiff/Appellant - Thomas Neil Guidry, Jr.**

**THIBODEAUX, Chief Judge.**

This case involves a custody dispute between the plaintiff-appellant, Thomas Neil Guidry, Jr., (Neil Guidry) and the defendant-appellee, Theresa Kaiser Guidry. Following a bench trial, the trial court denied Neil Guidry's request for a change of domiciliary custody of the parties' minor child, Olivia. For the following reasons, we affirm the judgment of the trial court.

## I.

## ISSUES

We must decide whether the trial court erred in denying domiciliary custody of the minor daughter of the parties to the father, Neil Guidry.

## II.

## FACTS AND PROCEDURAL HISTORY

In October of 2006 the divorced parties entered into a consent judgment awarding domiciliary custody of Matthew, age fifteen (15), to his father, Neil Guidry, and awarding domiciliary custody of Olivia, age fourteen (14), to her mother, Theresa Guidry. The parents resided one block away from each other in Krotz Springs, Louisiana, and visitation was to be every other week for both parties; that is, seven days with each parent. The consent judgment further provided that neither party would pay child support and that any claim to back child support would be waived. Finally, the consent judgment ordered that the parents and the children all go to counseling, and that the case would be reviewed in three months. Because of Matthew's troubled relationship with his mother, Matthew's visitation with her was to follow the recommendations of the counselor and Matthew's own wishes.

In February of 2007, Neil Guidry filed a Rule for domiciliary custody of Olivia and for child support. The trial court denied any change in domiciliary

custody. The new 2007 judgment continued the 2006 consent judgment with an additional order for all four of the Guidrys to go to one family counselor at the same time to work out their problems. The judgment ordered that the family counselor follow the requirements of La.R.S. 9:331 and provide a written report to the court.

Neil Guidry appealed the judgment of the trial court denying his Rule for custody of Olivia and for child support. The parties attended counseling as ordered, and the counselor furnished the requested report to the trial court in October of 2007. Theresa Guidry answered Neil's appeal and attached a copy of the October 2007 report to her answer. Neil Guidry filed a motion with this court to strike the post trial report by the family counselor. For the following reasons, we strike the post-trial report of the family counselor as inadmissible evidence in this appellate court.

III.

**LAW AND DISCUSSION**

**Standard of Review**

An appellate court may not set aside a trial court's findings of fact in absence of manifest error or unless it is clearly wrong. *Stobart v. State, Through DOTD*, 617 So.2d 880 (La.1993). This is especially applicable in a child custody dispute wherein appellate courts accord substantial deference to the trial judge's conclusions. "The trial judge is in a better position to evaluate the best interest of a child from his observance of the parties and the witnesses and his decision will not be disturbed on review absent a clear showing of abuse." *Deason v. Deason*, 99-1811, p. 2 (La.App. 3 Cir. 4/5/00), 759 So.2d 219, 220 (citing *State in the Interest of Sylvester*, 525 So.2d 604, 608 (La.App. 3 Cir. 1988) (citing *Bagents v. Bagents*, 419 So.2d 460 (La.1982))).

2

Every child custody case must be viewed within its own peculiar set of facts, and a trial court's award of custody is entitled to great weight and will not be overturned on appeal unless an abuse of discretion is clearly shown. *Connelly v. Connelly,* 94-527 (La.App. 1 Cir. 10/7/94), 644 So.2d 789. Both the Louisiana Legislature and the Louisiana Supreme Court have made it abundantly clear that the primary consideration and prevailing inquiry is whether the custody arrangement is in the best interest of the child. *See Evans v. Lungrin*, 97-541, 97-577 (La. 2/6/98), 708 So.2d 731.

## Admission of the Post-Trial Report

As a threshold matter, the October 2007 report of the post trial family counseling sessions is not properly before this court. An appellate court cannot consider evidence which was not part of the record made in the trial court. *White v. West Carroll Hosp., Inc.*, 613 So.2d 150 (La.1992). Accordingly, the report will be stricken, and those portions of Theresa Guidry's brief that discuss the report will not be considered by this court as part of the current appeal.

## Burden of Proof

Neil Guidry contends that the trial court erred in denying a change in custody that would render him the domiciliary parent of Olivia. Where, as here, the underlying custody decree is a stipulated or consent judgment, rather than a considered decree[1], the party seeking modification of the decree must prove that (1) there has been a material change of circumstances since the custody decree was

---

[1] When a trial court has made a *considered decree* of permanent custody, the party seeking a change bears a heavy burden of proving that the continuation of the present custody is "so deleterious to the child as to justify a modification of the custody decree," or of proving by "clear and convincing evidence that the harm likely to be caused by the change of environment is substantially outweighed by its advantages to the child." *Bergeron v. Bergeron*, 492 So.2d 1193, 1200 (La.1986).

entered, and (2) the proposed modification is in the best interest of child. *Hensgens v. Hensgens*, 94-1200 (La.App. 3 Cir. 3/15/95), 653 So.2d 48, *writ denied*, 95-1488 (La. 9/22/95), 660 So.2d 478. The party is not required to prove under *Bergeron* that continuation of the present custody arrangement is so deleterious to the child as to justify modification or that the harm likely to be caused by a change of environment is substantially outweighed by the advantages to the child. *Evans v. Lungrin*, 97-0541 (La. 2/6/98), 708 So.2d 731.

## Material Change in Circumstances

Mr. Guidry has not shown a material change in circumstances. Also contrary to Mr. Guidry's assertion, the trial court did briefly address this issue by twice stating that Mr. Guidry had shown "almost nothing" in this regard, and the record supports the trial court's finding. Neil Guidry argues that, after the October 2006 consent judgment, Olivia has said that she wants to live with her father, that she is tired of going house to house, that Olivia and Matthew now attend the same school, and Olivia wants to spend more time with her brother. These feelings do not represent a material change in circumstance justifying a change in custody.

Olivia expressed the desire to live with her father in 2004, prior to the consent judgment in 2006. Therefore, the fact that Olivia and Matthew now go to the same school militates in favor of *not* changing the custody arrangement because the siblings have more time together now that they are in the same school. With regard to the packing and going house to house, visitation with both parents is every other week; that is, seven days with each parent, and this requires packing and going house-to-house. Neither party has suggested that visitation be stopped or that the parties reconcile completely, which are the only two circumstances that will prevent Olivia's having to pack and go to each party's house. This is an unfortunate result of divorce,

4

but can be somewhat alleviated by the parents each providing for Olivia's necessities in order to minimize the packing.

## Best Interests of the Child

With regard to the second criteria, La.Civ.Code art. 134[2] requires the courts to consider all relevant factors in determining the best interest of the child, and it provides a list of factors that the courts *may* use to assist them in reaching their decisions. In this case, the trial court considered the factor of the influence that Neil and Matthew, neither of whom has made significant strides in getting past the divorce, have over Olivia. Matthew deliberately misbehaved at school and at his mother's house and managed to get expelled from both. The court indicated in oral

_____

[2]Art. 134. Factors in determining child's best interest

The court shall consider all relevant factors in determining the best interest of the child. Such factors may include:

(1) The love, affection, and other emotional ties between each party and the child.

(2) The capacity and disposition of each party to give the child love, affection, and spiritual guidance and to continue the education and rearing of the child.

(3) The capacity and disposition of each party to provide the child with food, clothing, medical care, and other material needs.

(4) The length of time the child has lived in a stable, adequate environment, and the desirability of maintaining continuity of that environment.

(5) The permanence, as a family unit, of the existing or proposed custodial home or homes.

(6) The moral fitness of each party, insofar as it affects the welfare of the child.

(7) The mental and physical health of each party.

(8) The home, school, and community history of the child.

(9) The reasonable preference of the child, if the court deems the child to be of sufficient age to express a preference.

(10) The willingness and ability of each party to facilitate and encourage a close and continuing relationship between the child and the other party.

(11) The distance between the respective residences of the parties.

(12) The responsibility for the care and rearing of the child previously exercised by each party.

reasons that Matthew was controlling everything at age sixteen and that Neil had given him too much information about the divorce. Olivia is an "A" student and was characterized by the counselor, Patricia M. Lafleur, who examined the family members at different sessions, as the most well-adjusted person in the family. The record reveals that the mother and daughter love each other very much, and Olivia enjoys doing things with her mother.

The trial court addressed the factors of La.Civ.Code art. 134 and determined that both parents love their children and have equal capacity to provide for the needs of the children. The record indicates that Neil does construction work in a town about seventy-five miles away from his home, and that Theresa is an X-ray technician at Opelousas General Hospital. While the court often lapsed into criticism of both parents' inability to handle Matthew instead of focusing its comments on Olivia, it is clear that the court felt that Neil Guidry had a history of being less willing to facilitate and encourage a close and continuing relationship between the children and their mother. This is supported by the record. Dr. Timothy J. Trant, Ph.D., a licensed psychologist at the Counseling Center of South Louisiana, reported in August of 2006 that "Mr. Guidry spent a large portion of the interview denigrating Ms. Kaiser's ability in her spousal and parental roles."

Dr. Trant further reported that, during his interview with Matthew, Matthew admitted that his father had probably told him too much about the difficulties between his parents. Other evidence in the record indicated that Neil Guidry recorded and played a tape to his children of Theresa Guidry on the telephone with another male. Dr. Trant indicated that Matthew's strong negative attitude toward his mother was a result of his own interactions with her and "his exposure to negative and hostile opinions expressed by Mr. Guidry regarding Ms. Kaiser." Ms.

Lafleur reported that she felt that Matthew was carrying his father's rage toward the mother. Dr. Trant spoke much of Mr. Guidry's resentment toward and denigration of Theresa. He further reported that "a simple psychological principle states that when individuals with similar opinions associate, their existing opinions get stronger." While Dr. Trant did not interview Olivia, it is clear that the court felt that Neil and Matthew would negatively influence Olivia's relationship with her mother.

Ms. Lafleur reported that Olivia and her mom were best friends and enjoyed doing things together, and that when either Olivia or Matthew needed something on short notice, Theresa was the one who ran the errands and attended to their needs, even if Matthew's need was communicated through Olivia. Theresa plays softball with Olivia and used to be her team's softball coach through the eighth grade. According to Ms. Lafleur, Olivia's preference for living with her father is largely based upon the fact that she misses being with her brother, who is at the father's house. Matthew drives to school, and Olivia gets to ride with him when she is there. She misses that and the friends coming over to see Matthew at the father's house.

Both parents are seeing other people. Olivia does not care for her mother's boyfriend, nor does she like the children of the woman that the dad is dating. Both parents testified at trial that they limited their activities with their significant others when the children were with them. The trial court indicated that he always considers the preference of the child, but he looks at maturity and makes the best call under the circumstances. Ms. Lafleur stated that the child should always be heard regarding her preference, but the decision should "absolutely not" be left to the child to make.

7

Neil Guidry argues that the trial court ignored the rule about family solidarity and cites *Howze v. Howze*, 99-852 (La. 5/26/99), 735 So.2d 619, which held that, when feasible, a court should shape its orders in child custody cases to maintain family solidarity. There, the court found that it was not appropriate to separate two brothers, at approximately ages two (2) and seven (7) years old where there was no expert testimony introduced at the hearing which would tend to show that separating the children was in their best interests. *Howze* is clearly distinguishable from the present case, given the gender and age differences and the presence of expert testimony in this case.

Neil Guidry also cited two other cases which are distinguishable rather than analogous to the present case. In *Winzor v. Winzor*, 03-329 (La.App. 3 Cir. 10/1/03), 856 So.2d 107, a panel of this court found that the best interest of children was to remain together where the middle and youngest of three children suffered mental and physical problems, and where the smaller children with special needs would rely on the older child, "more than in a situation where the siblings are closer in age." *Id.* at 115. Similarly, in *Theriot v. Huval*, 413 So.2d 337 (La.App. 3 Cir. 1982), custody of three children ages fifteen (15), eleven (11) and six (6) years of age was awarded to the father where the mother intended to move herself and the children fifty-five (55) miles away from the family home in order to be near her boyfriend.

The common thread that does run between the cited cases and the present case is that the courts always seek to determine the best interests of the children involved. In the present case, we believe that the trial court has done just that. Accordingly, based upon the specific facts of this case, we believe that it is in Olivia's best interest to remain with her mother and to enjoy alternating seven days with each parent.

IV.

**CONCLUSION**

Based upon the foregoing, we affirm the judgment of the trial court in all respects. All costs of appeal are assessed against Thomas Neil Guidry, Jr.

**AFFIRMED.**